# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEPHAN M. RAMSIER, | ) |
| | ) Civil Action No. 15 – 539 |
| Plaintiff, | ) |
| | ) |
| v. | ) Magistrate Judge Lisa Pupo Lenihan |
| | ) |
| ALLEGHENY COUNTY, RICH | ) |
| FITZGERALD, WARDEN | ) ECF Nos. 15, 24, 27 |
| ORLANDO HAPER, DEPUTY | ) |
| WARDEN MONICA LONG, CAPT. | ) |
| STEPHANIE FRANK, CORIZON | ) |
| MEDICAL ORG., DAVID DRUSKIN, | ) |
| BOB ONICK, VICKY THOMAS, | ) |
| ARNIE SHANK, | ) |
| | ) |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Stephan M. Ramsier ("Plaintiff") is a state inmate currently confined at the State Correctional Institution at Somerset. He initiated this prisoner civil rights action on April 28, 2015. The claims asserted in his Complaint (ECF No. 5) concern events that occurred while he was confined at the Allegheny County Jail from November 2014 through January 2015. Defendants have filed Motions to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), (ECF Nos. 15, 24, 27), and although Plaintiff was given the opportunity to respond to the Motions, (ECF Nos. 17, 26, 29), he did not do so. The Motions are now ripe for review.

### I.   Plaintiff's Allegations

The following allegations are contained in Plaintiff's Complaint.

First, Plaintiff alleges that the conditions in the intake processing area of the Allegheny County Jail ("ACJ") are "deplorable" and "substandard." He states that on October 23, 2014, he

1

was placed in a small cell with thirty other men from approximately 9:00 p.m. until 7:00 a.m., and because of the crowded conditions, he was forced to either lie directly on the cement floor or sit on the floor with his back against the wall. He claims that he did not know whether any of these other individuals had lice, T.B., hepatitis, bed bugs, etc., and some of them were dangerous because they were detoxing from heroin, alcohol and other unknown substances. He states that the conditions were very "unsafe, unprofessional, and unorganized," and that as a direct cause of the overcrowded conditions, toilets overflowed, there was no toilet paper, the sleeping conditions were unsanitary, and everyone's nerves were on edge. (ECF No. 5 at pp. 1-2.)

Plaintiff asked for protective custody because he was in fear for his life and the request was granted. He was then placed in a cell by himself, Cell #122, on October 24, 2014. (ECF No. 5 at p.2.)

On November 25, 2014, Plaintiff was told to move from Cell #122 to Cell #221. The next morning, he woke up to find "numerous irritating red bumps/bite marks on [his] arms, right leg and [his] face." (ECF No. 5 at p.3.) He states that his cellmate had the same type of marks on his body as well. The both of them told the officer on duty and requested medical attention. They were sent to the infirmary and were given a shot of Benadryl by Nurse Michelle, but Plaintiff's request to have the marks photographed as evidence was denied. However, the nurse notified the pod officer and advised that Plaintiff and his cellmate should exchange the mattresses as well as all clothing and linen in the cell. While Plaintiff states that this was done, he also states that the cell was not exterminated. As such, he woke up the next morning, on November 27, 2014, to find a bug crawling on him. Plaintiff states that he squeezed the bug between his fingers and that there was a lot of blood that came out of it. He placed the bug onto a piece of tape for evidence and again notified the pod officer. Plaintiff states that the pod

officer sent for new clothing and bedding again and told them to clean the cell from top to bottom. While in the middle of cleaning, Captain Frank came to inspect the situation. Plaintiff states that he showed her the "years of filth" that he had dug out from the ends of the bunks, that she confiscated the piece of tape with the bug on it and took pictures of the dirt and the marks on Plaintiff's neck and arms. Plaintiff and his cellmate were then instructed to move from Cell #221 to Cell #224 and to clean the new cell from top to bottom before they moved in. ([ECF No. 5 at p.3](#).)

Plaintiff alleges that he must have been allergic to whatever bit him because the bite wounds were "extremely itchy" and painful. On November 30, 2014, he put in another medical slip, but he was not seen until December 27, 2014, despite submitting numerous more medical slips and requests for medical attention. At this point, the bite wounds on Plaintiff's arm had become infected. Someone said that they would get him some antibiotic ointment but he claims to have never seen that person again. ([ECF No. 5 at p.4](#).)

On January 2, 2015, Plaintiff showed his arm to Ms. James and Officer Butler. He claims that Ms. James "freak[ed] out" and that Mr. Butler said, "I don't care what they say down there at the infirmary, I'll take you down now." ([ECF No. 5 at pp.4-5](#).) Plaintiff was taken down at 11:00 a.m. but the infirmary could not see him at that time. He was brought back down at 4:00 p.m. at which time he met with David Druskin who appeared "happy and overly excited about cutting [Plaintiff's] arm open." ([ECF No. 5 at p.5](#).) He made a one-and-a-half inch incision on Plaintiff's left arm near his elbow and packed it with gauze. They told Plaintiff that he would need to come back to the infirmary every day to clean and re-bandage the wound, but Plaintiff states that on three different occasions it took longer than two days before that occurred. Plaintiff sent a request to Warden Harper and Deputy Warden Long asking to be sent to a

3

hospital, but Deputy Warden Long denied the request because he used the wrong form. Although Plaintiff does not state that he was diagnosed with MRSA, he alleges that it is a life threatening disease that he will continue to have for the rest of his life and that it could have been avoided absent "gross negligence" by ACJ, Corizon and its employees. (ECF No. 5 at p.5.)

## II. Standard of Review

Recently, the United States Court of Appeals for the Third Circuit aptly summarized the standard to be applied in deciding motions to dismiss filed pursuant to Rule 12(b)(6):

> Under the "notice pleading" standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with "a short and plain statement of the claim showing that the pleader is entitled to relief." As explicated in Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), a claimant must state a "plausible" claim for relief, and "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Although "[f]actual allegations must be enough to raise a right to relief above the speculative level," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." Fowler, 578 F.3d at 213 (quotation marks and citations omitted); *see also* Covington v. Int'l Ass'n of Approved Basketball Officials, 710 F.3d 114, 117–18 (3d Cir.2013).

Thompson v. Real Estate Mortg. Network, 748 F.3d 142, 147 (3d Cir. 2014).

When considering *pro se* pleadings, a court must employ less stringent standards than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003). In a §1983 action, the court must "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d

4

244, 247-48 (3d Cir. 1999)). *See also* Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [*pro se*] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293 F.3d at 688). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See*, *e.g.*, Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002); Riddle v. Mondragon, 83 F.3d 1197, 2102 (10th Cir. 1996).

The court must allow amendment by the plaintiff in civil rights cases brought under § 1983 before dismissing pursuant to Rule 12(b)(6), irrespective of whether it is requested, unless doing so would be "inequitable or futile." Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007); *see also* Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) (asserting that where a complaint is vulnerable to dismissal pursuant to 12(b)(6), the district court must offer the opportunity to amend unless it would be inequitable or futile).

## III. Discussion

### A. Claims against the individual defendants in their individual capacity.

#### 1. Defendant Rich Fitzgerald

Plaintiff states that he is pursuing a claim against Rich Fitzgerald, Allegheny County Executive, for "the malpractice, negligence, and mistreatment from Corizon Medical Group and certain staff members. . . . [and] certain administration employees of the [ACJ] . . . for committing it, co-signing it, and condoning it as an unofficial custom." He further states that he is pursuing these claims against Rich Fitzgerald because he "[has] the power and the knowledge to enforce and change the overall totality of the condition in the daily operations of the [ACJ]." (ECF No. 5 at pp.2-3.)

Plaintiff's claims against Defendant Fitzgerald fail because of lack of personal involvement. To establish personal liability against a defendant in a section 1983 action, that defendant "must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988) (citing Parratt v. Taylor, 451 U.S. 527, 537 n. 3 (1981)). "In a § 1983 suit or a Bivens action—where masters do not answer for the torts of their servants—the term 'supervisory liability' is a misnomer." Iqbal, 129 S. Ct. at 1949. Instead, each Government official, regardless of his or her title, is only liable for his or her own misconduct. Id. "[I]t is not enough for a plaintiff to argue that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did." Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989).

In the context of a defendant who is alleged to have performed in a supervisory role, courts have identified two general instances in which either the conduct of that supervisor-defendant or the policies/procedures of that supervisor-defendant may amount to personal involvement and thereby warrant a finding of individual, supervisory liability for a constitutional tort: First, supervisory liability may attach if the supervisor personally "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced" in a subordinate's unconstitutional conduct. A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (citing Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995)). Second, liability may attach if the supervisor, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." Id. (quoting Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989)). In this second instance, a plaintiff must

6

prove the following four elements to establish supervisory liability: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-supervisor was aware that the policy created an unreasonable risk; (3) the defendant-supervisor was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure. Sample, 885 F.2d at 1118;[1] Brown v. Muhlenberg Twp., 269 .3d 205 (3d Cir. 2001).

Plaintiff's Complaint, liberally construed, does not allege any specific facts showing personal involvement by Defendant Fitzgerald. His allegations suggest that Fitzgerald somehow endorsed the alleged wrongdoing by others and that he condoned the acts of others as "unofficial custom" at the ACJ. However, there are no factual allegations that Defendant Fitzgerald *personally* participated with others in violating Plaintiff's rights, directed others to violate them, or had knowledge of and acquiesced in any subordinate's unconstitutional conduct vis-à-vis Plaintiff. Furthermore, the Complaint does not set forth a factual basis from which to conclude that Defendant Fitzgerald personally established and maintained any policy or procedure which, in turn, directly caused constitutional harm to Plaintiff. The Complaint likewise fails to assert facts indicating that any of Fitzgerald's supposed policies or procedures created an unreasonable risk of a constitutional violation. There are no factual allegations demonstrating that Defendant Fitzgerald was aware of any policy or procedure creating any unreasonable risk, that he was subjectively indifferent to any risk, or that some policy failure caused his harm.

In addition, to the extent the Complaint avers that Defendant Fitzgerald personally and directly participated in conduct that constituted malpractice or negligence (as compared to him

---

[1] In this Circuit, when a plaintiff seeks to hold a defendant liable under the Eighth Amendment in his or her role as a supervisor, "*Sample*'s four-part test provides the analytical structure . . . ., it being simply the deliberate indifference test applied to the specific situation of a policymaker." Beers-Capitol v. Whetzel, 256 F.3d 120, 135 (3d Cir. 2001).

7

condoning the conduct of others), allegations of malpractice and/or negligence are insufficient to establish the deliberate indifference requisite for a constitutional violation. Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993) (indicating prisoner must show deliberate indifference, which is more than malpractice or negligence, in order to establish a civil rights violation). For these reasons, Plaintiff does not state a plausible claim for relief against Defendant Fitzgerald, and the claims asserted against him in his individual capacity will therefore be dismissed.

### 2. Defendants Warden Orlando Harper, Deputy Warden Monica Long, and Capt. Stephanie Frank

Plaintiff states that he is pursuing a claim against Defendants Harper, Long and Frank "for overcrowding, and deliberate indifference concerning dirt and filth throughout the entire jail, which creates a tremendously dangerous environment for lice, roaches, and bed bugs and when bitten causes sores that can become infected with staph and/or MRSA." In addition, he states that Defendants Harper, Long and Frank "commit[], co-signs, and condones, the malpractice and mistreatment from lower ranking staff members as well as Corizon Medical employees, because of the overall totality of the conditions." (ECF No. 5 at pp.6-7.)

First, it is unclear whether Plaintiff was a pretrial detainee or a convicted prisoner during the time he was confined in the ACJ. Thus, it is also unclear whether the protection of the Eighth Amendment's Cruel and Unusual Punishments Clause or the Due Process Clause of the Fourteenth Amendment applies to his conditions of confinement claim.[2] *See* id. at 164 (stating

---

[2] The Eighth Amendment "was designed to protect those convicted of crimes and consequently the Clause applies only after the State has complied with constitutional guarantees traditionally associated with criminal prosecutions." Whitley v. Albers, 475 U.S. 312, 318 (1986) (citation and internal quotations omitted). Thus, the Eighth Amendment's Cruel and Unusual Punishment's Clause does not apply until "after sentence and conviction." Graham v. Connor, 490 U.S. 386, 392 at n.6 (1989). It imposes a duty on prison officials to provide "humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care." Farmer v. Brennan, 511 U.S. 825, 832 (1994). In Wilson v.

8

that claims that arose while a plaintiff was a pretrial detainee must be prosecuted under the Due Process Clause, while claims that arose after he was sentenced are analyzed under the Cruel and Unusual Punishments Clause). While recognizing that the case law is unclear as to whether the Fourteenth Amendment provides some measure of additional protections for pretrial detainees above what the Eighth Amendment affords convicted prisoners,[3] the Court will analyze Plaintiff's claim under the Due Process Clause because the Third Circuit Court of Appeals has hinted that a pretrial detainee's "due process rights are at least as broad, if not broader, than his rights under the Eighth Amendment." Tapp v. Proto, 404 F. App'x 563, 566 (3d Cir. 2010) (citing Fuentes v. Wagner, 206 F.3d 335, 344 (3d Cir. 2010)).

Under the Fourteenth Amendment, a pretrial detainee is protected from any and all punishment. *See* Hubbard v. Taylor, 399 F.3d 150, 166 (3d Cir. 2005) (citing Bell v. Wolfish, 441 U.S. 520, 535-36 (1979)). A condition constitutes punishment "when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the

---

Seiter, 501 U.S. 294 (1991), the Supreme Court set forth the standard for alleged violations of the Eighth Amendment while addressing non-medical conditions of confinement. The Court held that the prisoner must prove that prison officials acted with deliberate indifference that deprived him of "'the minimal civilized measure of life's necessities.'" Id. at 298-99, 301-05 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).

[3] The standard to apply when evaluating conditions of confinement imposed on pretrial detainees is not clear and has been the subject of recent scholarly debate. Catherine T. Struve, *The Conditions of Pretrial Detention*, 161 U. PA. L. REV. 1009 (2013). However, the Supreme Court and the Third Circuit have unequivocally held that the Fourteenth Amendment due process standard is at least as protective as the Eighth Amendment cruel and unusual punishment standard when analyzing conditions of confinement. *See* Bell v. Wolfish, 441 U.S. 520, 545 (1979) ("pretrial detainees, who have not been convicted of any crimes, retain at least those constitutional rights that we have held are enjoyed by convicted prisoners"); Stevenson v. Carroll, 495 F.3d 62, 70 (3d Cir. 2007) ("the protections due to sentenced inmates provide a floor for what pretrial detainees may expect").

restriction is excessive in light of that purpose." Stevenson v. Carroll, 495 F.3d 62, 68 (3d Cir. 2007).

The only allegation in Plaintiff's Complaint that asserts personal involvement on the part of Defendants Warden Harper and Deputy Warden Long is that Plaintiff sent in a request to them asking to be transferred to a hospital but Defendant Long denied the request because it was on the wrong form. (ECF No. 5 at p.5.) This allegation, in and of itself, is simply insufficient to plausibly suggest that either Defendant Harper or Long denied the request intentionally to punish Plaintiff. The Complaint does not state what facts, if any, were in Plaintiff's written request; what Defendants knew at the time Plaintiff asked to be sent to a hospital; or whether Plaintiff's condition was serious enough warranting transfer to an outside hospital. Furthermore, the Complaint does not explain what harm was ultimately caused by Plaintiff not having been sent to a hospital. Therefore, the Complaint does not support a claim that Defendants Harper or Long was deliberately indifferent to Plaintiff's condition so as to violate his rights under the Fourteenth Amendment.

With respect to Defendant Frank, Plaintiff alleges that she visited his cell, photographed his bite wounds and the dirt in his cell, and instructed Plaintiff and his cellmate to clean a cell to which they were moved. (ECF No. 5 at p.3.) These allegations indicate that Defendant Frank took remedial action against Plaintiff's issues rather than acting with deliberate indifference to his problems. While Plaintiff alleges that Defendant Frank "put the blame" on him and his cellmate for the bedbugs, and that several months passed before the ACJ took efforts to exterminate the bedbugs from the pod, his allegations do not rise to the severity of the conditions

in which courts have considered sufficient to state a claim.[4] *See* White v. Monohan, 326 F. App'x 385, 388 (7th Cir. 2009) (unpublished) ("White claimed that for over five years the bugs, roaches, spiders, wasps, and bees had bitten and stung him so often as to leave multiple scars, wounds, and sores, causing him internal injuries.") (internal quotation marks omitted); Antonelli v. Sheahan, 81 F.3d 1422, 1431 (7th Cir. 1996) (holding inmate had stated a claim for inhumane conditions of confinement based on allegations of pest infestation spanning sixteen months even where prison officials sprayed cell twice).  As such, Plaintiff does not state a claim against Defendant Frank with respect to the conditions of his confinement regarding the bedbugs.  *See* Carson v. Main, 2015 WL 1850193, at *4 (D.N.J. Apr. 21, 2015) (the presence of bed bugs in the facility in and of itself is not sufficient to constitute a constitutional violation).

With respect to Defendants Frank, Harper and Long, Plaintiff alleges that they were deliberately indifferent to the overcrowding and uncleanliness of the ACJ and that they committed, co-signed and condoned the malpractice and mistreatment by ACJ and Corizon staff members.  However, apart from Plaintiff's allegations regarding bedbugs, his allegations of overcrowding and uncleanliness are conclusory and unsupported by any factual matter in the Complaint.  Moreover, to the extent the Complaint may be trying to allege that these Defendants were personally negligent or somehow committed a type of malpractice, such allegations do not rise to the level of deliberate indifference so as to demonstrate civil rights liability.  Durmer, 991 F.2d at 67.

---

[4] In an unpublished decision, the U.S. Court of Appeals for the Seventh Circuit commented, "Courts have routinely recognized that "[k]eeping vermin under control in jails, prisons and other large institutions is a monumental task, and that failure to do so, without any suggestion that it reflects deliberate and reckless conduct in the criminal law sense, is not a constitutional violation." Chavis v. Fairman, 1995 WL 156599, *4 (7th Cir. Apr. 6, 1995) (internal punctuation and string citations omitted).

B. **Claims against the individual defendants in their official capacity.**

Plaintiff has also sued the individual named Defendants in their official capacity. However, the United States Supreme Court has held that

> [o]fficial-capacity suits . . . "generally represent only another way of pleading an action against an entity of which an officer is an agent." Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690, n. 55 (1978). As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. Brandon, *supra*, 469 U.S., at 471-472. It is *not* a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against an official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.

Kentucky v. Graham, 473 U.S. 159, 165-66 (1985). Because the individual Defendants are employees of Allegheny County, Plaintiff's claims against these Defendants in their official capacity will be dismissed as duplicative to Plaintiff's claim against Allegheny County, which are addressed in the following section.

C. **Claims against Allegheny County**

In Monell v. New York City Dep't of Social Servs., 436 U.S. 658 (1978), the United States Supreme Court held that municipalities and other local governmental units are "persons" subject to liability under 42 U.S.C. § 1983. In so ruling, however, the Court declared that municipal liability may not be premised on the mere fact that the governmental unit employed the offending official, that is, through application of the doctrine of *respondeat superior*. Instead, the Court concluded that a governmental unit may be liable under § 1983 only when its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Monell, 436 U.S. at 694. The "official policy" requirement distinguishes acts of the municipality from acts of employees of the

municipality, thereby limiting liability to action for which the municipality is actually responsible. Id.

In finding municipal liability pursuant to § 1983, the plaintiff must identify the policy, custom or practice of the municipal defendant that results in the constitutional violation. Id. at 690-91. A municipal policy is made when a decision-maker issues an official proclamation or decision. Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986), *quoted in,* Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990). A custom or practice, however, may consist of a course of conduct so permanent and widespread that it has the force of law. Andrews, 895 F.2d at 1480. To establish municipal liability based upon a custom or practice, the plaintiff must demonstrate that the decision-maker had notice that a constitutional violation could occur and that the decision-maker acted with deliberate indifference to this risk. Berg v. County of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000). Finally, the plaintiff must show a causal connection between the custom or policy and the violation of the constitutional right. Bielevicz v. Dubinon, 915 F.2d 845, 850-51 (3d Cir. 1990). That is, a plaintiff must demonstrate an "affirmative link" or "plausible nexus" between the custom or practice and the alleged constitutional deprivation. Bielevicz, 915 F.2d at 850-51. "As long as the causal link is not too tenuous, the question whether the municipal policy or custom proximately caused the constitutional infringement should be left to the jury." Id. at 851 (citing Black v. Stephens, 662 F.2d 181, 190-91 (3d Cir. 1981)).

Although Plaintiff complains about specific conditions of his confinement at the ACJ (e.g., overcrowding, unsanitary cell, exposure to bedbugs, inadequate medical treatment), Plaintiff does not identify any policy or custom attributable to Allegheny County that is responsible for these alleged conditions. That is Plaintiff has not articulated facts demonstrating

13

that these conditions occurred as part of a course of conduct so permanent and well-settled as virtually to constitute law at the ACJ. Plaintiff states, at most, what the particular conditions were when he was present at the ACJ, but the facts do no show an ongoing custom. Consequently, Plaintiff necessarily fails to show a causal link between a defective policy or custom and a constitutional deprivation.[5] Therefore, the claims against Allegheny County will be dismissed.

### D. Claims against Corizon Medical, David Druskin, Bob Onick, Vicky Thomas and Arnie Shank

Plaintiff states that he is pursuing claims against Defendants Corizon, Druskin, Onick, Thomas and Shank because "these people were in charge at the time that I requested to seek medical help, when I was bitten by bed bugs and there was no follow-up concerning my well-being, when I needed further medical attention when one of the irritating bite wounds became infected . . . ." (ECF No. 5 at pp.7-8.)

#### 1. Failure to File a Certificate of Merit

It is unclear whether Plaintiff's Complaint asserts a state law claim for professional liability. If so, Pennsylvania law requires that a Certificate of Merit ("COM") accompany a claim for professional liability brought against certain designated licensed professionals, including health care providers and nurses. This requirement is provided for in Pennsylvania Rule of Civil Procedure 1042.3, which states that the COM must be filed within sixty days following any action where it is alleged that "a licensed professional deviated from the acceptable professional standard." Pa. R. Civ. P. 1042.3. The Third Circuit Court of Appeals

---

[5] Plaintiff likewise fails to identify an individual with final-decision making authority as would be necessary to demonstrate that they could make policies at the ACJ. However, the County Defendants acknowledge, for the purpose of these proceedings, that Warden Harper is a policy-maker for the ACJ.

14

has held that this COM requirement is a rule of substantive law and must be applied by federal courts in professional negligence cases. Liggon-Redding v. Estate of Sugarman, 659 F.3d 258, 264-65 (3d Cir. 2011).

Plaintiff's Complaint was first docketed on June 17, 2015, making the deadline for filing his COM August 16, 2015. (ECF No. 5.) Plaintiff did not file a COM. Therefore, to the extent Plaintiff is asserting a professional liability claim against any of the individual medical defendants, those claims are subject to dismissal with prejudice because he did not file a COM.

### 2. Lack of Personal Involvement

As stated *supra*, to establish personal liability against a defendant in a section 1983 action, that defendant "must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988) (citing Parratt v. Taylor, 451 U.S. 527, 537 n. 3 (1981)). Aside from naming Corizon, Thomas, Shank, and Orrick in the caption of his Complaint and indicating that they were "in charge," Plaintiff has not alleged or implicated their personal involvement in any medical care or attention he received or that he claimed he should have received. Instead, Plaintiff's allegations against Corizon and the aforementioned individuals appear to be based on a theory of *respondeat superior*, which is impermissible to show a defendant's personal involvement. Furthermore, Plaintiff's allegations do not suggest that these defendants could be liable on a supervisory liability theory, as discussed in section III.A.1. of this Opinion. Therefore, the claims against these individual Defendants will be dismissed.

### 3. **Deliberate Indifference**

In the context of medical treatment, an inmate must prove two elements: (1) that he was suffering from a "serious medical need," and (2) that prison officials were deliberately indifferent to the serious medical need.[6] Estelle v. Gamble, 429 U.S. 97, 106 (1976).

The first showing requires the court to objectively determine whether the medical need was "sufficiently serious".  A medical need is "serious" if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.  Monmouth County Correctional Institutional Inmates v. Lanzara, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The second prong requires a court subjectively to determine whether the officials acted with a sufficiently culpable state of mind.  Deliberate indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or risk of injury.  Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993).  A prisoner must demonstrate that the official acted with more than mere negligence.  Estelle, 419 U.S. at 105; Wilson v. Seiter, 501 U.S. 294, 303 (1991).  To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health or safety.  Farmer, 511 U.S. at 837.  It is a "well-established rule that mere disagreements over medical judgment do not state Eighth Amendment claims."  White v. Napoleon, 897 F.2d 103 (3d. Cir. 1990).

---

[6] With respect to medical care, courts apply the Eighth Amendment standard to determine whether a pre-trial detainee's rights were violated.  *See* Lenhart v. Pennsylvania, No. 13-1173, 2013 U.S. App. LEXIS 11723, 2013 WL 2479409 (3d Cir. June 11, 2013) ("[A] pretrial detainee is not entitled to Eighth Amendment protections, but nevertheless a pretrial detainee's claim of inadequate medical care is evaluated under the same standard as a convicted prisoner's Eighth Amendment claim of inadequate medical care[.]") (citing Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 581 (3d Cir. 2003)).

16

Moreover, "[a] court may not substitute its own judgment for diagnosis and treatment decisions made by prison medical staff members." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979).

With respect to Defendant Druskin, Plaintiff simply alleges that he performed some type of procedure on his arm and directed him to follow up for re-bandaging. He does not indicate that Defendant Druskin counseled or even contributed to any delay or follow up care. It is unclear why there was a delay of two days to change the bandages on the three occasions, but even taking his allegations as true for purposes of the motion to dismiss, Plaintiff has not forth sufficient factual allegations that would enable a claim of deliberate indifference to go forward. As such, Defendant Druskin will be dismissed.

Additionally, a private corporation, such as Corizon, may be held liable under section 1983 only where it has instituted a policy or custom that caused Plaintiff's constitutional injury. *See* Natale, 318 F.3d at 583-84. Here, there are no allegations that Corizon had an affirmative policy or custom that caused Plaintiff's alleged harm. Therefore, they are entitled to dismissal to the extent Plaintiff is trying to establish their liability on the grounds other than *respondeat superior*, which is impermissible. Id. at 584.

### E. Legal Theories

Plaintiff's Complaint seeks relief under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 1983 (for violations of his due process rights), Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971), supplemental jurisdiction of unspecified state law claims, the Federal Tort Claims Act ("FTCA"), and international law. He also seeks relief under federal declaratory judgment and injunction provisions. (ECF No. 5 at p.8.)

First, Plaintiff has failed to allege any facts to support a plausible claim for relief under the ADA or international law. Second, Bivens and the FTCA apply only when the United States is a Defendant, and it is not a Defendant in this case. *See* Bivens, 403 U.S. at 395; 28 U.S.C. § 1346. Third, Plaintiff's requests for injunctive and declaratory relief are moot because he is no longer confined at the ACJ and he has failed to demonstrate that "there [is] a reasonable likelihood that [he will] be subjected to the same action again."[7] *See* Sutton v. Rasheed, 323 F.3d 236, 248-49 (3d Cir. 2003) (stating that an inmate's transfer out of a prison normally moots his claims for equitable and declaratory relief) (quoting Abdul-Akbar, 4 F.3d 195, 206 (3d Cir. 1993)). Fourth, Plaintiff has not specified the state law claims he is pursuing, and to the extent he is trying to vindicate his due process rights under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983, the Complaint does not successfully plead facts showing a violation of those rights. *See*, *supra*. Consequently, to the extent Plaintiff seeks relief under any of these legal theories, his purported claims will be dismissed.

### F. Punitive Damages

Plaintiff asserts claims for punitive damages against all Defendants. To the extent that claim is directed at Allegheny County and the County Defendants in their official capacities then the claim must be dismissed because the United States Supreme Court has held that "a municipality is immune from punitive damages under 42 U.S.C. § 1983." City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981).

On the other hand, punitive damages against individual defendants in their individual capacities are available

---

[7] Plaintiff was released from the ACJ on May 20, 2015 and is now an inmate at SCI-Somerset. *See* Defs.' Ex. B, ECF No. 28-2 (ACJ Inmate LookUp Screen Shot showing Plaintiff's release from the ACJ on 5/20/15).

18

> where the defendants have acted with a "reckless or callous disregard of, or indifference to, the rights and safety of others." Bennis v. Gable, 823 F.2d 723, 734 (3d Cir.1987) (quoting Smith v. Wade, 461 U.S. 30, 56 (1983)). However, "punitive damages in general represent a limited remedy, to be reserved for special circumstances." Savarese v. Agriss, 883 F.2d 1194, 1205 (3d Cir.1989) (citing Cochetti v. Desmond, 572 F.2d 102, 105–06 (3d Cir.1978)). "[D]espite its utility as a deterrent, the punitive damage remedy must be reserved, we think, for cases in which the defendant's conduct amounts to something more than a bare violation justifying compensatory damages or injunctive relief." Cochetti, 572 F.2d at 106.

Keenan v. City of Philadelphia, 983 F.2d 459, 469-70 (3d Cir. 1992).

As discussed *supra*, the Complaint does not establish that the individual Defendants acted with "reckless or callous disregard of, or indifference to," Plaintiff's rights and safety. Therefore, all punitive damages claims will be dismissed.

### G. Unliquidated Damages

Plaintiff demands $4,500,000.00 in unliquidated damages. However, Local Rule 8 of the United States Court for the Western District of Pennsylvania prohibits the pleading of specific amounts of unliquidated damages. LCvR8. Therefore, Plaintiff's demand will be stricken.

### H. Amendment of Complaint

The court must allow amendment by the plaintiff in civil rights cases brought under § 1983 before dismissing pursuant to Rule 12(b)(6), irrespective of whether it is requested, unless doing so would be "inequitable or futile." Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007); *see also* Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) (asserting that where a complaint is vulnerable to dismissal pursuant to 12(b)(6), the district court must offer the opportunity to amend unless it would be inequitable or futile). We are cognizant of these holdings, but find that allowing for amendment by Plaintiff would be futile. A careful review of the record commands that Plaintiff, even garnering all the liberalities that accompany his *pro se* status, fails to state any claims for which relief may be granted.

The following Order is now entered.

**AND NOW** this 9th day of March,

**IT IS HEREBY ORDERED** that the Motion to Dismiss filed by Defendants Corizon, Bob Onick, Arnie Shank, and Vicky Tomas (ECF No. 15) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Motion to Dismiss filed by Defendant David Druskin (ECF No. 24) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Motion to Dismiss filed by Defendants Allegheny County, Rich Fitzgerald, Stephanie Frank, Orlando Harper and Monica Long (ECF No. 27) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's request for punitive damages is denied and his demand for unliquidated damages is stricken from his Complaint.

**IT IS FURTHER ORDERED** that the Complaint (ECF No. 5) is **DISMISSED** with prejudice and the Clerk of Court shall mark this case **CLOSED**.

**AND IT IS FURTHER ORDERED** that, pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, Plaintiff has thirty (30) days to file a notice of appeal as provided by Rule 3 of the Federal Rules of Appellate Procedure.

/s/ Lisa Pupo Lenihan
Lisa Pupo Lenihan
United States Magistrate Judge

Cc: Stephan M. Ramsier
LZ8664
SCI Somerset
1600 Walters Mill Road
Somerset, PA 15510
(Via First Class U.S. Mail)

Counsel for Defendants
(Via CM/ECF electronic mail)